The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The employee-employer relationship existed between the parties at all relevant times.
3. The defendant was a duly qualified self-insured with Kemper Risk Management Services as the servicing agent.
4. The plaintiff sustained an admittedly compensable injury on February 27, 1992, as a result of which the parties entered into a Form 21 Agreement for Compensation.
5. The plaintiff's average weekly wage was $341.25, which yields a compensation rate of $227.51.
6. The following documents were received into evidence at the hearing:
a. One hundred fifty-six pages of medical reports;
b. Plaintiff's Answers to Defendant's Interrogatories;
c. Defendant's Answers to Plaintiff's Interrogatories; and
d. Industrial Commission forms.
 ***********
The Full Commission adopts the findings of fact with minor modifications found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a fifty year old female high school graduate who has been employed by the defendant for thirteen years as a coin products technician. Plaintiff's duties involved packing bags of Doritos into boxes.
2. On February 27, 1992, the plaintiff reported to her employer that she had developed right elbow pain while packing Sun Chips. The plaintiff was diagnosed as having epicondylitis. The defendant accepted this as a compensable occupational disease. As a result of the right elbow epicondylitis, the plaintiff remained out of work from December 22, 1992 through June 6, 1993. The plaintiff returned to work at modified duty on June 7, 1993, and then returned to work at full duty on June 27, 1993.
3. As a result of the admittedly compensable occupational disease, the plaintiff was rated as retaining a five percent permanent partial impairment to her right arm, for which she received compensation. On July 1, 1993, a Form 28B was filed with the Commission.
4. In 1994, the plaintiff was diagnosed by Dr. Warren Burrows as having epicondylitis of the left elbow, although he had treated her for this condition since January 4, 1991.
5. The defendant accepted the left elbow disease as compensable on or about September 29, 1994. The plaintiff was rated as retaining an eight percent permanent partial impairment to the left arm, for which she received compensation.
6. From July 18, 1994 through September 4, 1994, the plaintiff received temporary total disability benefits. She returned to modified duty on September 5, 1994, and to full duty on October 25, 1994.
7. The plaintiff had experienced pre-existing and unrelated medical problems, including urological problems, sciatica, foot problems, lumbar spine problems, uterine surgery, chronic sinusitis, and depression.
8. The plaintiff continued to complain of pain and discomfort in her left elbow, for which she was referred to Dr. David N. DuPuy on April 4, 1995. On April 6, 1995, Dr. DuPuy injected her left elbow with a steroid.
9. The plaintiff worked for the defendant through April 27, 1995, at which time she took a week of vacation leave. Thereafter, the plaintiff took a medical leave for her non-work-related back and foot conditions. The plaintiff was terminated on February 24, 1996, in order to receive Social Security disability.
10. On April 29, 1995, Dr. DuPuy released the plaintiff to return to eight hour work.
11. On June 22, 1995, and on July 27, 1995, Dr. DuPuy again injected steroids in the plaintiff's left elbow. No further treatment was rendered.
12. On August 18, 1995, the plaintiff was hospitalized for psychiatric treatment as a result of depression and suicidal ideation.
13. While Dr. DuPuy concluded there was no causal connection between the steroid injections and plaintiff's emotional breakdown, plaintiff's treating psychiatrist, Dr. Hayne McMeekin, opined that the cortisone injections to the left elbow aggravated her pre-existing psychological condition, resulting in her hospitalization.
14. The steroid injections administered for treatment of the compensable occupational disease involving the left elbow aggravated plaintiff's pre-existing psychological condition and, as a result of which, she is disabled.
15. The plaintiff is in need of ongoing psychiatric treatment, including medication and therapy.
16. The plaintiff received short-term disability benefits from August 28, 1995 through December 5, 1995. The plaintiff contributed to the short-term disability premiums.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff has sustained a substantial change of condition since the approval of the Form 26 on April 3, 1995, as a result of the steroid injections she received for treatment of her left elbow which was an admittedly compensable occupational disease. N.C. GEN. STAT. § 97-47.
2. As a result of the change of condition, the plaintiff is entitled to have the defendant pay temporary total disability compensation from April 28, 1995, and continuing until further orders of the Commission. N.C. GEN. STAT. § 97-29. The defendant is entitled to a credit for its contributions to the short-term disability benefits paid to plaintiff. N.C. GEN. STAT. § 97-42.
3. The plaintiff is entitled to have the defendant pay for reasonable and necessary medical expenses incurred, or to be incurred, as a result of the required psychiatric treatment. N.C. GEN. STAT. §§ 97-2(19), 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendant shall pay temporary total disability compensation to the plaintiff at the rate of $227.51 per week from April 28, 1995, and continuing until further orders of the Commission, subject to a credit for defendant's contribution to the short-term disability benefits. As much of said compensation as has accrued shall be paid to plaintiff in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to counsel.
3. The defendant shall pay medical expenses incurred, or to be incurred, for treatment as may be necessary to effect a cure, provide relief, or lessen plaintiff's period of disability, including psychiatric treatment, when bills for the same has been properly submitted for approval.
4. The defendant shall pay the costs, including an expert witness fee of $350.00 to Dr. David N. DuPuy.
This the ___ day of April 1998.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN JR., CHAIRMAN
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
DCS:bjp